DEPARTMENT OF THE CORPORATION COUNSEL

DANA M.O. VIOLA            6095-0
Corporation Counsel
ERNEST H. NOMURA           4829-0
KURT Y. NAKAMATSU          8870-0
GABRIELE V. PROVENZA  10261-0
Deputies Corporation Counsel
City and County of Honolulu
530 South King Street, Room 110
Honolulu, Hawaii  96813
Telephone:  768-5120/768-5245
Email:  enomura@honolulu.gov
         knakamatsu@honolulu.gov
         g.provenza@honolulu.gov

Attorneys for Defendants
CITY AND COUNTY OF HONOLULU and
RICK BLANGIARDI, in his official capacity
as Mayor of the City and County of Honolulu

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KAIMI K. PELEKAI; KEITH DANIEL MICHAEL; MINORU NAKAGAWA; MANAHEL AL-HOZAIL; THERESA MCGREGOR; FREDERIC NEWTON BOOTH III; TAMAYO PERRY; VINCENT TRIPI; JOZLYN HARRINGTON; ANTHONY PANGAN; CLYDE HOLOKAI; JOSHUA DUKES; on behalf of themselves and all other similarly situated persons,<br><br>Plaintiffs, | CIVIL NO.  CV 21-00343 DKW-RT<br><br>DEFENDANTS CITY AND COUNTY OF HONOLULU AND RICK BLANGIARDI'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; DECLARATION OF HIROKAZU TOIYA; DECLARATION OF WALTER MEDINA; DECLARATION OF MELANIE LEE, M.D.; |

*(caption continued on next page)*

|  |  |
|---|---|
| vs.<br><br>STATE OF HAWAII; DAVID Y. IGE, in his official capacity as Governor of the State of Hawaii; CITY AND COUNTY OF HONOLULU; RICK BLANGIARDI, in his official capacity as Mayor of the City and County of Honolulu; COUNTY OF MAUI; MICHAEL P. VICTORINO, in his official capacity as Mayor of the County of Maui; XAVIER BECERRA, in his official capacity as United States Secretary of Health and Human Services; JOHN AND JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; and OTHER DOE ENTITIES 1-10,<br><br>            Defendants. | DECLARATION OF NOEL T. ONO; DECLARATION OF ERNEST H. NOMURA; EXHIBITS A - H; CERTIFICATE OF COUNSEL; CERTIFICATE OF SERVICE<br><br><br>DATE:   TBD<br>TIME:   TBD<br>JUDGE:  Honorable Derrick K. Watson |

2

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................... iii

INTRODUCTION .................................................................. 1

RELEVANT FACTS UNDERLYING THE MOTION ............................ 4

    A.    THE CITY'S RESPONSE TO THE COVID-19
          PANDEMIC ............................................................ 4

    B.    THE CITY'S VACCINE MANDATE UNDER
          DIRECTIVE 2021-7 .................................................. 9

    C.    THE FEDERAL RESPONSE TO COVID-19 AND
          VACCINES MANDATES ..................................... 12

    D.    PLAINTIFFS .......................................................... 15

STANDARD OF REVIEW ....................................................... 16

ARGUMENT ...................................................................... 18

PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF MUST
BE DENIED ....................................................................... 18

    A.    PLAINTIFFS ARE UNLIKELY TO SUCCEED ON
          THE MERITS OF ANY OF THEIR CLAIMS
          AGAINST THE CITY ............................................... 18

          1.    Plaintiffs' Claims Are Moot......................... 19

          2.    Plaintiffs' Constitutional Claims Lack Merit................ 22

    B.    PLAINTIFFS DO NOT SUFFER IRREPARABLE
          HARM IN THE ABSENCE OF INJUNCTIVE
          RELIEF ................................................................ 25

Page

C.    THE BALANCE OF EQUITIES DECIDEDLY TIP
      IN FAVOR OF THE CITY, NOT PLAINTIFFS ................... 26

D.    INJUNCTIVE RELIEF THAT PLAINTIFFS SEEK
      IS NOT IN THE PUBLIC INTEREST .................................. 27

CONCLUSION ........................................................................... 28

TABLE OF AUTHORITIES

Page

**<u>Cases</u>**

<u>Alliance for the Wild Rockies v. Cottrell,</u>
    632 F.3d 1127 (9th Cir. 2011)............................................................ 17

<u>America's Frontline Doctors v. Wilcox</u>
    2021 U.S. Dist. LEXIS 144477 (C.D. Cal. July 30, 2021) ............... 23

<u>Bridges v. Houston Methodist Hosp.,</u>
    2021 U.S. Dist. LEXIS 110382 (S.D. Tex. June 12, 2021).............. 18

<u>California ex rel. Becerra v. Azar,</u>
    950 F.3d 1067 (9th Cir. 2020) (en banc) .......................................... 17

<u>California v. Azar,</u>
    911 F.3d 558 (9th Cir. 2018).............................................................. 17

<u>Carribean Marine Servs. Co. v. Baldridge,</u>
    844 F.2d 668 (9th Cir. 1988).............................................................. 25

<u>City & County of San Francisco v. USCIS,</u>
    944 F.3d 773–89 (9th Cir. 2019)........................................................ 17

<u>Harris v. University of Massachusetts,</u>
    2021 WL 3848012, (D. Mass. Aug. 27, 2021) ................................. 24

<u>Jacobson v. Massachusetts,</u>
    197 U.S. 11 (1905)............................................................................. 22, 24

<u>Janakievski v. Exec. Dir., Rochester Psychiatric Ctr.,</u>
    955 F.3d 314 (2d Cir. 2020).............................................................. 20

<u>Jayaraj v. Scappini,</u>
    66 F.3d 36 (2nd Cir. 1995)................................................................ 25

<u>Klaassen v. Trustees of Indiana University,</u>
    2021 U.S. Dist. LEXIS 133300......................................................... 12, 18

Page

Libertarian Party of Erie Cty. v. Cuomo,
    970 F.3d 106 (2d Cir. 2020),
    cert. denied sub nom., 2021 U.S. LEXIS 3287,
    2021 WL 2519117 (U.S. June 21, 2021) .......................................... 22

Lopez v. Brewer,
    680 F.3d 1068 (9th Cir. 2012) (per curiam) ...................................... 16

Munaf v. Green,
    553 U.S. 674 (2008)........................................................................... 16

Norris v. Stanley,
    2021 WL 3891615 (W.D. Mich. Aug. 31, 2021).............................. 24

Price v. City of Stockton,
    390 F.3d 1105 (9th Cir. 2004)........................................................... 17

Regents of the Univ. of Cal. v. Am. Broad. Co.,
    747 F.2d 511 (9th Cir. 1984)............................................................. 25

Susan B. Anthony List v. Driehaus,
    573 U.S. 149 (2014).......................................................................... 19

TransUnion LLC v. Ramirez,
    594 U.S. __, __, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021) ........... 19

Univ. of Haw. Prof'l Assembly v. Cayetano,
    183 F.3d 1096 (9th Cir.1999)............................................................ 26

Ventura County Christian High Sch. v. City of San Buenaventura,
    233 F. Supp. 2d 1241 (C.D. Cal. 2002) ............................................ 25

Wade v. University of Connecticut Bd. of Trustees,
    2021 U.S. Dist. LEXIS 153565......................................................... 18, 21

Winter v. Natural Resources Defense Council, Inc.,
    555 U.S. 7 (2008)............................................................................ passim

Page

## **Statutes**

U.S. Const. art. III, § 2, cl. 1 ........................................................  19
U.S. Const. amend. XIV ..........................................................  3, 18, 23

21 U.S.C. § 360bbb-3 .............................................................  4, 14, 18
42 U.S.C. § 1983...................................................................

Haw. Rev. Stat. ch. 127A........................................................  4, 18

## **Other**

*Requiring the Use of a Vaccine Subject to an Emergency Use
Authorization*,
        45 Op. O.L.C. __ (July 6, 2021).......................................................  14

11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
        Federal Practice and Procedure § 2947 (2nd ed. 1995)....................  25

"Monitoring Incidence of COVID-19 Cases, Hospitalizations,
and Deaths, by Vaccination Status — 13 U.S. Jurisdictions,
April 4–July 17, 2021," Morbidity and Mortality Weekly
Report, Early Release Vol 70 (Sept. 10, 2021), available at
https://www.cdc.gov/mmwr/volumes/70/wr/pdfs/mm7037e1-H.pdf........................  26, 28

**DEFENDANTS CITY AND COUNTY OF HONOLULU AND
RICK BLANGIARDI'S MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION**

INTRODUCTION

Defendants City and County of Honolulu and Rick Blangiardi, in his official

capacity as Mayor of the City and County of Honolulu (collectively "City") oppose

Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction

("Motion").  The City's response to the COVID-19 pandemic with regard to the

City workplace and workforce has been proactive, aggressive, and legally

compliant.  The numbers speak for themselves:  since February 2020, when the

City first took action to mitigate the viral spread throughout the City and County of

Honolulu, the City's workforce has had 427 employees infected with the virus as

of September 13, 2021.  See Declaration of Hirokazu Toiya ("Toiya Decl.") at

¶ 12; Declaration of Walter Medina ("Medina Decl.") at ¶ 6.

In comparison, as of September 13, 2021, the Island of Oahu has had 50,573

COVID-19 positive cases.  Statewide, the State of Hawaii has had 72,352 COVID-

19 positive cases.  https://health.hawaii.gov/coronavirusdisease2019/current-situation-in-

hawaii/#top.   In terms of deaths attributable to COVID-19, on August 27, 2021, the

City sadly reported its first COVID-19 positive related death of one of its own

employees.  See https://www.staradvertiser.com/2021/08/27/breaking-news/honolulu-records-

1st-known-coronavirus-related-death-of-city-and-county-of-honolulu-employee-mayor-rick-

blangiardi-says/. As of September 13, 2021, the City and County of Honolulu has

had 503 deaths attributable to COVID-19; the State of Hawaii has had 660 deaths

attributable to COVID-19. https://www.staradvertiser.com/coronavirus/. And as the

Court and counsel are all too aware, the number of COVID-19 positive cases and

deaths in the State and in the City have been and will keep rising.

It is in this COVID-19/"Delta variant" universe that Mayor Blangiardi

promulgated Mayor's Directive No. 2021-7, issued on August 10, 2021, as

amended on August 16, 2021 ("Directive 2021-7"). See Exhibit A.[1] As discussed

in more detail below, by operation of Directive 2021-7, all City employees[2] are

required to be fully vaccinated with the "FDA emergency use authorized" COVID-

_____

[1] Directive 2021-7 was first issued on August 10, 2021, which required
compliance by August 16, 2021. Pursuant to the amended Directive 2021-7, issued
on August 16, 2021, the compliance deadline was extended to August 23, 2021.
The amended Directive 2021-7 is the operative directive and is attached hereto as
Exhibit A.

[2] The term "City employees" is defined as "any regular, probationary, limited
term, provisional, or short-term employee, or an employee in an exempt position or
on a personal services contract who is currently employed, whether on a full-time
or part-time basis. Employees who are employed on an on-call, performance based,
hourly or other basis in which they work only when scheduled, are included in this
definition. Semi-autonomous agencies and its employees and personnel are also
included in this definition as well as all City officers and appointed officials.
Excluded from this definition are elected City officials, volunteers, and unpaid
members of boards and commissions."

19 vaccines[3] by August 23, 2021, must be partially vaccinated against COVID-19, or submit to the City a medical or religion exemption request.  City employees who are partially COVID-19 vaccinated, having only received the first dose of a two-dose COVID-19 vaccination series, are required to complete their second dose no later than September 23, 2021.  City employees whose requests for medical or religion exemptions have been approved must be tested weekly by undergoing an FDA-approved COVID-19 test.  Failure to comply with Directive 2021-7 will result in appropriate action taken against the employee, up to and including employment termination.

On August 13, 2021, three days after Directive 2021-7 was first issued, ten (10) City employees and two (2) County of Maui employees filed a putative class action complaint against the State of Hawaii, Governor David Y. Ige, the City, Mayor Rick Blangiardi, County of Maui, Mayor Michael E. Victorino, and Xavier Becerra, Secretary of the United States Department of Health and Human Services for alleged violations of the First, Fourth, Fifth, and Fourteenth Amendments of the

---

[3]  At the time of the issuance of Directive 2021-7, three COVID-19 vaccines were being administered throughout the United States pursuant to the U.S. Food and Drug Administration's "emergency use authorization":  the Pfizer-BioNTech COVID-19 two dose vaccine, the Moderna COVID-19 two dose vaccine, and the Johnson & Johnson COVID-19 single dose vaccine.  On August 23, 2021, the FDA formally approved the Pfizer-BioNTech COVID-19 two dose vaccine.  See https://www.fda.gov/media/151710/download.

United States Constitution, 21 U.S.C. § 360bbb-3, the Civil Rights Act of 1871,

and 42 U.S.C. § 1983.  The Motion was filed concurrently with the complaint.

Plaintiffs are unlikely to prevail on the merits and cannot satisfy the required

elements to support extraordinary injunctive relief.  The Motion should be denied.

## RELEVANT FACTS UNDERLYING THE MOTION

### A. The City's Response to the COVID-19 Pandemic

Since February 2020, the City has taken aggressive, deliberate, and proactive

steps to address, mitigate, and contain the virus that causes COVID-19.  The City

has issued 14 emergency proclamations and 40 related emergency orders,

including two "stay at home, work from home" orders and a curfew order, pursuant

to Haw. Rev. Stat. ch. 127A, so as to limit and contain the community spread of

the virus and the resulting burden on the county's health care system.  Toiya Decl.

at ¶ 7.  See also http://www.honolulu.gov/mayor/proclamations-orders-and-rules.html.

Working in concert and in conjunction with the Governor of the State of Hawaii,

the Hawaii State Department of Health, the Hawaii Emergency Management

Agency, business leaders, nonprofit and community organizations, health care

professionals, travel industry leaders, the other county mayors, state and county

elected officials, and other relevant stakeholders, the City, throughout the

pandemic, has taken measured steps to ensure that the safety, health, and welfare

4

of its workforce and all residents of the City are protected, guarded, and maintained.  Toiya Decl. at ¶ 8.

By and large, the City's response has been successful.  See, e.g., https://time.com/5915084/hawaii-covid-coronavirus/.  Measured by the number of COVID-19 positive infections, the City's workplace and workforce have been safe in comparison to the Island of Oahu and the State of Hawaii.  Toiya Decl. at ¶ 9.  Medina Decl. at ¶ 7; Exhibit B.  The City's workplace safety officers and physicians have aggressively worked with all City departments and personnel to ensure that the workplace remains safe to minimize spread of the virus at the workplace.  The City has acquired and issued "personal protective equipment" ("PPE"), including N95 masks, KN95 masks, surgical masks, gloves, eye protection goggles, face shields; installed plexiglass shields in the office space; distributed thermometers, alcohol-based hand sanitizers and disinfecting solution and wipes.  It has reduced density at the workplace by implementing a "telework" program for certain office personnel.  It has even limited public access to some City facilities so as to minimize interaction with the general public and to reduce the likelihood of infection of public-facing City employees.  Medina Decl. at ¶ 8; Toiya Decl. at ¶ 10.

The City has also aggressively mobilized the City's two physicians to work with departments and employees when City employees have tested positive for the

5

COVID-19 virus.  Declaration of Melanie Lee, M.D. ("Lee Decl.") at ¶ 7.  The City physicians work with the impacted employee and the State Department of Health to contact trace and provide up-to-date medical advice and recommendations for City employees and their families and "close contacts."  Id.

The City has also mobilized COVID-19 testing sites that allow all City employees to undergo a COVID-19 test on their own accord and whenever ordered by a physician or the City physician.  See https://www.staradvertiser.com/2020/11/06/hawaii-news/mobile-testing-lab-for-virus-unveiled-at-honolulu-airport/.  Finally, with the "emergency use authorization" of the Pfizer, Moderna, and Johnson & Johnson COVID-19 vaccines, since December 2020 – May 2021, the City mobilized the City workforce vaccination points of distribution at the Leeward Community College.  See https://www.staradvertiser.com/2021/03/31/breaking-news/leeward-community-college-clinic-to-offer-coronavirus-vaccines-to-essential-business-workers/.[4]  As of September 13, 2021, over 1.37 million or 68% of Honolulu residents have been vaccinated.  See https://health.hawaii.gov/coronavirusdisease2019/#counts.  As of September 7, 2021, over 8,300 City employees have been fully vaccinated with an additional 713 employees partially vaccinated.  Toiya Decl. at ¶ 11.

---

[4]  The City worked closely with the Queen's Medical Center ("QMC") to stand up QMC's COVID-19 vaccination point of distribution located at the Neal S. Blaisdell Center.  Toiya Decl. at ¶ 11.  See https://apnews.com/article/honolulu-hawaii-coronavirus-pandemic-coronavirus-vaccine-013a59644205fcdc2452386dc90c0b9c.

Just over two months ago, the Hawaii Department of Health's State Laboratories Division detected the SARS-CoV-2 variant B.1.617.2, also known as the Delta variant of concern ("Delta variant") in all counties of the State.  See https://health.hawaii.gov/news/files/2021/06/21-095-Delta-variant-detected-in-all-major-counties.pdf.  On June 25, 2021, the date on which the State Department of Health issued its press release on the detection of the Delta variant in all counties of the State of Hawaii, the seven (7) day average of new COVID-19 positive cases for the Island of Oahu was 26.  https://health.hawaii.gov/coronavirusdisease2019/current-situation-in-hawaii/.  On August 10, 2021, when Directive 2021-7 was first issued, the seven (7) day average of new COVID-19 positive cases for the Island of Oahu was 347. Id.  Thus, in just 46 days, new COVID-19 cases on the Island of Oahu increased 1234.61%.

Given the dramatic rise in infection throughout the State and in the City and County of Honolulu, the State and City's response was measured, deliberate, and decisive in order to stem the rapid spread of the virus.  On August 5, 2021, Governor Ige issued the Emergency Proclamation Related to the COVID-19 Response ("State testing mandate").  See https://governor.hawaii.gov/wp-content/uploads/2021/08/2108026-ATG_Emergency-Proc-for-COVID-19-Response-distribution-signed.pdf, attached hereto as Exhibit C.  Under the Governor's State testing mandate, all State and county employees were required to demonstrate

proof of fully vaccinated status by August 16, 2021, or be required to undergo a

COVID-19 test once or twice per week.  The Governor's State testing mandate

provided the following carve out:

> Notwithstanding the provisions set forth in this Section III, the mayor
> of any county may issue directives related to vaccinations and testing
> that are applicable only to that county's permanent and temporary
> employees, as defined by the county. Nothing in this Section III is
> intended or construed to preempt the mayor of any county from
> issuing such a vaccination mandate directive.

Based on this carve out, on August 10, 2021, Mayor Blangiardi issued

Directive 2021-7, the City's vaccine mandate.  Exhibit A.  Unlike the State's

testing mandate, the City's vaccine mandate requires all City employees to be

vaccinated, unless exempted based on medical or religion reasons.  Those City

employees whose requests for exemptions are granted are allowed to be tested

once per week to determine if they are in fact infected with the virus.  Appropriate

employment action, including employment termination, will occur for those City

employees who do not comply with the Directive 2021-7.  Declaration of Noel T.

Ono ("Ono Decl.") at ¶ 6.

On August 10, 2021, Governor Ige issued Executive Order No. 21-05,

Statewide Limits for Social Gatherings, Restaurants, Bars, and Social

Establishments ("EO 21-05").  https://governor.hawaii.gov/wp-

content/uploads/2021/08/2108048-ATG_Executive-Order-No.-21-05-distribution-signed.pdf.

By operation of EO 21-05, all indoor social gatherings in the State of Hawaii are

limited to 10 persons and all outdoor social gatherings are limited to 25 persons.

Gatherings in restaurants, bars, social establishments and professional events are

also restricted and curtailed.  The mayors of the counties are empowered to

implement more restrictive rules or orders related to gatherings occurring in their

respective counties.  EO 21-5 at ¶ 5.

On August 23, 2021, Mayor Blangiardi issued Emergency Order No. 2021-

10, by which social gatherings in the City and County of Honolulu are further

restricted.  The basis of the Mayor's Emergency Order No. 2021-10 was due in

large part to the increased and virulent spread of the Delta variant in the City:

> The Delta variant of the SARS-CoV-2 virus has changed the course of the pandemic in the City urgently, such that the COVID-19 continues to endanger the health, safety, and welfare of the people of Hawaiʻi and requires the immediate and serious attention, effort, and sacrifice of all people in the City to avert unmanageable strains on our healthcare system and other catastrophic impacts to the City.  It is critical to slow virus transmission as much as possible to protect the most vulnerable and to prevent the health care system from being overwhelmed, while also allowing access to basic life necessities and economic recovery.  One proven way to slow the transmission is to limit interactions among people, especially in connection with mass gatherings/large events.  These amendments help preserve critical healthcare capacity in the City while allowing essential and safe business and community activities and functions to continue.

## B. The City's Vaccine Mandate under Directive 2021-7

As infections continued to rise, Mayor Blangiardi took other proactive

measures to safeguard City employees.  Modeled after the City and County of

Denver's vaccine mandate for Denver's municipal employees,[5] the City issued its vaccine mandate for the City workforce on August 10, 2021, with a compliance deadline of August 16, 2021.  The initial deadline was later extended to August 23, 2021.  Exhibit A.

Pursuant to Directive 2021-7, City employees[6] were required to complete the "COVID-19 Attestation Form" by August 23, 2021, and turn in the completed form to their departments' designated personnel officer.  Exhibit D (Attachment A).  Ono Decl. at ¶ 7.  City employees were also able to complete the attestation form online at City VAX (hnl.info).  Employees who submitted the attestation form online were required to download a digital image of the CDC/Hawaii State Department of Health COVID-19 vaccination card.  Employees who submitted a "hard copy" of the attestation form would be required to download a digital image of their vaccine card later.

In order to make compliance with the City's vaccine mandate readily accessible, the City published an "attestation" notice that was posted for all City

---

[5] See https://www.denvergov.org/files/assets/public/covid19/documents/public-orders/ddphe-pho-8.2.21.pdf.  See also https://www.denvergov.org/Government/COVID-19-Information/Public-Health-Orders-Response/Public-Health-Orders.

[6] See n.2, infra at 2.

employees to access.  Exhibit F.  The City allowed employees to scan a "QR code" to make compliance to the mandate easy and accessible.  Ono Decl. at ¶ 9.

In completing the attestation form, the City employee was required to check off one of four "boxes" applicable to him/her:  (1) Box A:  "fully vaccinated" as of August 23, 2021; (2) Box B:  "partially vaccinated" by August 23, 2021, but will be fully vaccinated by September 23, 2021; (3)  Box C:  unvaccinated and will not be fully vaccinated by September 23, 2021, but will submit a request for exemption based on medical or religious reasons; or (4) Box D:  will not be fully vaccinated or partially vaccinated by August 23, 2021, or September 23, 2021, and will not submit a request for exemption based on religious or medical reasons.

Employees who checked off Box C were required to submit the "Request for Exemption from the City's COVID-19 Vaccination Mandate" form.  Exhibit D (Attachment B).  Being exempt from complying with Directive 2021-7 is only allowed for medical or religious reasons.  If an employee sought a medical exemption, he/she was required to complete the "Medical Provider Information Regarding Employee Unable to Receive COVID-19 Vaccine" form so that the City would be able to review additional information from the employee's medical care provider to support the employee's request to be exempted from the vaccine mandate based on medical grounds.  Exhibit E.

11

Requests for exemption based on religious grounds use the same "Request for Exemption from the City's COVID-19 Vaccination Mandate" form. Employees were asked to provide information to support the request. If additional information is needed to support the request, the employee is so notified.

All employees who submit requests for exemptions are required to undergo COVID-19 testing during the period the requests are being reviewed. All requests for exemptions on medical or religious grounds under the City's vaccine mandate are reviewed by the City's Department of Human Resources ("DHR") and in accordance with applicable federal and state laws, including Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act, as amended ("ADA"), as well as guidance from the U.S. Equal Employment Opportunity Commission. Employees and designated/authorized personnel officers will be informed via letter or electronic mail regarding the status of the request and/or of the Committee's decision. As of September 7, 2021, 890 requests for exemption were submitted. Ono Decl. at ¶ 10.

### C. The Federal Response to COVID-19 and Vaccines Mandates

In Klaassen v. Trustees of Indiana University, 2021 U.S. Dist. LEXIS 133300; __ F. Supp. 3d __; 2021 WL 3073926 (N.D. Ind. July 18, 2021), Judge Damon R. Leichty, United States District Judge for the Northern District of Indiana, provides this Court and the parties with a thorough and detailed summary

12

of the federal government's response to the COVID-19 pandemic and the eventual

development and distribution of the three COVID-19 vaccines.  Id. at 2021 U.S.

Dist. LEXIS, *20 - *32.  The City respectfully incorporates by reference Judge

Leichty's decision.  See Exhibit G.  In addition, the City respectfully refers the

Court to Secretary Becerra's Memorandum in Opposition to Plaintiffs' Motion for

Temporary Restraining Order and Preliminary Injunction filed on September 9,

2021, CM/ECF Doc. #23, for an overview of the federal response to the COVID-

19 pandemic and development of the FDA approved and EUA vaccines at 4-7.

Relevant to this Motion are four recent developments from the federal

government related to employer vaccine mandates:

1.      On September 9, 2021, President Biden issued an executive order that

requires each federal agency to implement a program that requires the COVID-19

vaccination for all of its employees to the extent consistent with applicable law.

https://www.whitehouse.gov/briefing-room/presidential-actions/2021/09/09/executive-order-on-
requiring-coronavirus-disease-2019-vaccination-for-federal-employees/.

The President's executive order is clear:

> The health and safety of the Federal workforce, and the health and
> safety of members of the public with whom they interact, are
> foundational to the efficiency of the civil service.  I have determined
> that ensuring the health and safety of the Federal workforce and the
> efficiency of the civil service requires immediate action to protect the
> Federal workforce and individuals interacting with the Federal
> workforce.  It is essential that Federal employees take all available
> steps to protect themselves and avoid spreading COVID-19 to their

co-workers and members of the public.  The CDC has found that the best way to do so is to be vaccinated.

Id.

2.     On August 23, 2021, the FDA formally approved the Pfizer-BioNTech

COVID-19 two dose vaccine.  See https://www.fda.gov/media/151710/download.

3.     On July 6, 2021, the Office of the Legal Counsel of the United States

Department of Justice issued its opinion letter that concluded as follows:

> [Section 564 of the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 360bbb-3] **does not prohibit public or private entities from imposing vaccination requirements, even when the only vaccines available are those authorized under EUAs**.  (Emphasis added).

Requiring the Use of a Vaccine Subject to an Emergency Use Authorization, 45

Op. O.L.C. __ (July 6, 2021) ("DOJ Opinion") at 18, available at

https://www.justice.gov/olc/file/1415446/download.  The DOJ Opinion is attached hereto

as Exhibit H for the Court's convenience.

The DOJ Opinion notes that there have been numerous challenges to

employers' mandatory vaccination policies premised on the "option to accept or

refuse" under section 564 of the FDCA, but so far the only judicial decision on

point has summarily dismissed such challenge.  Id. at 7.  In sum, the DOJ Opinion

concludes that section 564 only mandates disclosure that a person has the choice to

decide whether or not to take the EUA approved vaccine (without that decision

affecting their medical care), but it does not foreclose all secondary consequences

of failing to take the vaccine, including potential loss of employment.  Id. at 11,

citing Wen W. Shen, Cong. Research Serv., R46745, State and Federal Authority

to Mandate COVID-19 Vaccination at 4 (Apr. 2, 2021).  Based on a thorough

review of section 564 of the FDCA and relevant resources, the DOJ Opinion

concludes that section 564 of the FCDA does not prevent **public or private**

**employers** from mandating COVID-19 vaccines authorized under EUAs as a

condition of continued employment.

4.    On May 28, 2021, the U.S. Equal Employment Opportunity

Commission updated its guidance that advised employers that they may require

employees to be vaccinated as long as the employer extends reasonable

accommodations to employees with disabilities or sincerely held religious beliefs

that prevent them from receiving the COVID-19 vaccine.  See "What You Should

Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO

Laws," Technical Assistance Questions and Answers – Updated on May 28, 2021,

available at https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-

rehabilitation-act-and-other-eeo-laws#K.

### D. Plaintiffs

There are 12 class representatives:  10 are City employees and are covered

under Directive 2021-7.  Plaintiffs have not provided the Court or the City with

any information by way of declarations, testimony, or documents - and there is

15

nothing in the record - to show whether any of the Plaintiffs who are City employees have complied with Directive 2021-7 by attesting that they are fully vaccinated or partially vaccinated, have applied for a medical or religious exemption, have been granted or denied a request for exemption, or have simply refused to comply with the Directive.

All named putative class Plaintiffs, however, submitted requests for exemptions to the City's Department of Human Resources. Each of the requests has been granted. Ono Decl. at ¶ 11. Based on this fact, none of the Plaintiffs have justiciable claims against the City. There is no imminent threat of irreparable harm that they face under the City's vaccine mandate. The Motion should be denied. Indeed, the case should be dismissed.

## STANDARD OF REVIEW

The United States Supreme Court has deemed a preliminary injunction to be "an extraordinary remedy never awarded as of right." Munaf v. Green, 553 U.S. 674, 689-90 (2008); Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24 (2008). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Lopez v. Brewer, 680 F.3d 1068, 1072 (9th Cir. 2012) (emphasis in original) (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).

To obtain injunctive relief, a plaintiff "must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." City & County of San Francisco v. USCIS, 944 F.3d 773, 788–89 (9th Cir. 2019) (quoting Winter, 555 U.S. at 20) (alterations in original). "Likelihood of success on the merits is the most important factor." California v. Azar, 911 F.3d 558, 575 (9th Cir. 2018) (quotations omitted). See also California ex rel. Becerra v. Azar, 950 F.3d 1067, 1083 (9th Cir. 2020) (en banc) ("If a movant fails to establish likelihood of success on the merits, we need not consider the other factors.").

The Winter majority affirmed that irreparable harm has to be "likely" as opposed to just "possible." Id. at 22; see Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127 (9th Cir. 2011) (in light of Winter, without a showing of irreparable harm in the first instance, no balancing of remaining factors is permitted). Injunctions must be "narrowly tailored . . . to remedy only the specific harms shown by the plaintiffs." Price v. City of Stockton, 390 F.3d 1105, 1117 (9th Cir. 2004).

17

## ARGUMENT

## PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF MUST BE DENIED.

### A. PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS ON ANY OF THEIR CLAIMS AGAINST THE CITY.

Putative Class Plaintiffs have asserted claims against the City, the County of Maui, State of Hawaii, and the United States, through Secretary Becerra, predicated on the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and statutory violations based on 21 U.S.C. § 360bbb-3, the Civil Rights Act of 1871, and 42 U.S.C. § 1983.  Two federal courts have recently rejected similar constitutional and statutory challenges to private and public employer mandated vaccination policies:  Bridges v. Houston Methodist Hosp., 2021 U.S. Dist. LEXIS 110382 (S.D. Tex. June 12, 2021), and Klaassen v. Trustees of Indiana University, 2021 U.S. Dist. LEXIS 133300; __ F. Supp. 3d __; 2021 WL 3073926 (N.D. Ind. July 18, 2021).  One federal court has already ruled that plaintiffs who have been exempted from a vaccine mandate no longer have justiciable claims against the government institution.  Their challenge to the vaccine mandate was, accordingly, dismissed as a matter of law.  Wade v. University of Connecticut Bd. of Trustees, 2021 U.S. Dist. LEXIS 153565 *; __ F. Supp. 3d __; 2021 WL 3616035 (D. Conn. Aug. 16, 2021).  Under established federal judicial precedent, none of Plaintiffs' claims have merit.  Indeed, Plaintiffs' claims against the City are moot.

18

1.  Plaintiffs' Claims Are Moot.

Article III of the Constitution limits the jurisdiction of the federal courts to

"Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  "To establish Article

III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal

connection between the injury and the conduct complained of, and (3) a likelihood

that the injury will be redressed by a favorable decision."  Susan B. Anthony List

v. Driehaus, 573 U.S. 149, 157-58 (2014).  An injury-in-fact must be "concrete and

particularized and actual or imminent, not conjectural or hypothetical."  Id. at 158.

As the Supreme Court has recently observed, "[f]ederal courts do not possess a

roving commission to publicly opine on every legal question," and therefore they

"do not adjudicate hypothetical or abstract disputes."  TransUnion LLC v.

Ramirez, 594 U.S. __, __, 141 S. Ct. 2190, 2203, 210 L. Ed. 2d 568 (2021).

"Requiring a plaintiff to demonstrate a concrete and particularized injury caused by

the defendant and redressable by a court ensures that federal courts decide only the

rights of individuals, and that federal courts exercise their proper function in a

limited and separated government."  Id.  The doctrine of mootness establishes a

related limit on a federal court's jurisdiction.  "If, as a result of changed

circumstances, a case that presented an actual redressable injury at the time it was

filed ceases to involve such an injury, it ceases to fall within a federal court's

Article III subject matter jurisdiction and must be dismissed for mootness."

19

Janakievski v. Exec. Dir., Rochester Psychiatric Ctr., 955 F.3d 314, 319 (2d Cir. 2020).

All of the putative class members' claims are predicated on the City's vaccine mandate.  They complain that being compelled to take the COVID-19 vaccine violates their constitutional rights.  The City's vaccine mandate, however, allows each City employee to request an exemption based on his/her medical condition or sincere religious beliefs.  Here, each class Plaintiff who are City employees - Kaimi K. Pelekai; Keith Daniel; Michael Minoru Nakagawa; Manahel Al-Hozail; Theresa McGregor; Frederic Newton Booth III; Tamayo Perry; Vincent Tripi; Jozlyn Harrington; and Anthony Pangan -  submitted a request for exemption and each has been granted such an exemption.  They are, therefore, not required to take the COVID-19 vaccine and, instead, must comply with the weekly testing mandate.  Ono Decl. at ¶ 11.

While the City must maintain flexibility and remain nimble to address the COVID-19 pandemic and will exercise its emergency powers in order to mitigate the spread of the virus in the City's workplace based on guidance from state and federal governmental authorities, the City does not intend to revoke the exemptions granted to the putative class Plaintiffs who are City employees.  Ono Decl. at ¶ 12.  Thus, all of their claims predicated on the vaccine mandate, accordingly, are moot.  There is no case or controversy.  The case should be dismissed.

Judge Jeffrey Alker Meyer of United States District Court for the District of Connecticut so concluded when the court was faced with the University of Connecticut students' challenge to the school's vaccine mandate.  Wade v. University of Connecticut Bd. of Trustees, 2021 U.S. Dist. LEXIS 153565 *; __ F. Supp. 3d __; 2021 WL 3616035 (D. Conn. Aug. 16, 2021).  The University of Connecticut required all students who wished to attend classes or participate in any on-campus activity to be fully vaccinated against COVID-19.  Id. at *8.  Failure to comply with the policy resulted in loss of on-campus privileges and other sanctions.  Students may seek an exemption from the vaccine mandate for medical or non-medical reasons.  Id. at *8-9.

Two of the three plaintiffs sought for and received exemptions from the university's vaccine mandate.  As such, the Wade court did not hesitate to dismiss the case against the university, as the claims had been rendered moot.  The Wade court noted that the students who received exemptions from the school's vaccine mandate no longer had a "continuing real or expected imminent injury."  Id. at *7.  The court concluded: "where a plaintiff seeks to challenge a governmental requirement that no longer burdens or applies to the plaintiff, a federal court lacks jurisdiction to adjudicate the plaintiff's claim."  Id., citing Libertarian Party of Erie Cty. v. Cuomo, 970 F.3d 106, 122 (2d Cir. 2020) (plaintiffs who were granted firearms licenses lacked standing to challenge New York's requirements of good

21

moral character and no-good-cause-for-denial to obtain a firearm license), <u>cert.</u>

<u>denied sub nom.</u> <u>Libertarian Party v. Cuomo</u>, 2021 U.S. LEXIS 3287, 2021 WL

2519117 (U.S. June 21, 2021).

Because this Court should similarly dismiss Plaintiffs' complaint as moot, it

is highly unlikely that Plaintiffs will prevail on the merits of this case at all.

Plaintiffs' Motion, therefore, should be summarily rejected and denied.

<p align="center">2.  <u>Plaintiffs' Constitutional Claims Lack Merit</u>.</p>

Plaintiffs assert a mixed bag of legal challenges and constitutional claims

against the City and each of them lack merit.[7]  The starting point for the Court's

analysis in determining the merits of Plaintiffs' constitutional claims is <u>Jacobson v.</u>

<u>Massachusetts</u>, 197 U.S. 11 (1905), and its recent progeny, and the alleged

constitutional rights being violated and the degree of judicial scrutiny that the

Court should apply in this case.  In the context of the City's COVID-19

vaccination mandate, Plaintiffs' jumbled and confusing characterizations of the

City's vaccine mandate as violating the "right to be free from human medical

experimentation," or the "right to give informed consent to any medical treatment,"

or the "right of an individual to personal bodily integrity," or the right to free

exercise of religion to be "fundamental" under the First, Fourth, Fifth and

---

[7]  The City relies on Secretary Becerra's Memorandum in Opposition to Plaintiffs'
Motion on the "federal preemption" and federal statutory challenges that Plaintiffs
raise in their Complaint and Motion.

<p align="center">22</p>

Fourteenth Amendments (substantive and procedural due process), do not make them so. Courts have rejected heightened "strict scrutiny" to all of these types of challenges to a vaccine mandate and applied the "rational basis" test.

Thus, in America's Frontline Doctors v. Wilcox, 2021 U.S. Dist. LEXIS 144477 (C.D. Cal. July 30, 2021), the court applied the rational basis analytical framework to a challenge to the University of California's vaccine mandate. The Frontline Doctors court noted, for example, that no authority supported the proposition that the "right to informed consent" is a "fundamental right." Nor did the court find that the University of California's vaccine mandate – which was "neutral" and of "general applicability" – infringed on the constitutional protection of the free exercise of religion. Id. at *12-13.

In rejecting a similar constitutional challenge to the University of California's vaccine mandate, the Frontline Doctors court applied the "rational basis analytical framework and "easily" concluded that the university's mandate survived constitutional scrutiny:

> The [University of California's vaccine mandate] is "rationally related to a legitimate state interest." City of Cleburne, 473 U.S. at 440. The Supreme Court has recognized that "[s]temming the spread of COVID-19 is unquestionably a compelling interest." Cuomo, 141 S. Ct. at 67. At issue is whether the Policy is rationally related to this compelling state interest. The Policy easily meets this test.
>
> Over a century ago, the Supreme Court held that "a community has the right to protect itself against an epidemic of disease which

23

threatens the safety of its members." Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11, 27, 25 S. Ct. 358, 49 L. Ed. 643 (1905).

Id. at *13-14.  See also Klaassen, 2021 U.S. Dist. LEXIS 133300, 2021 WL 3073926, at *21 ("Government action that infringes on the liberty interest here . . . is subject to rational basis review.").  This is consistent with the longstanding application of rational basis review to assess mandatory vaccination measures. 2021 U.S. Dist. LEXIS 133300, [WL] at *24 (listing cases); Harris v. University of Massachusetts, 2021 WL 3848012, (D. Mass. Aug. 27, 2021) (dismissal of students' challenges to the University of Massachusetts's COVID-19 vaccination mandate; policy "is at least rationally related to [the University's] legitimate interests."); Norris v. Stanley, 2021 WL 3891615 (W.D. Mich. Aug. 31, 2021) ("[B]ecause Plaintiff does not have a constitutionally protected property interest in her employment position at MSU and is not being denied any constitutional rights under the Fourteenth Amendment, nor is employment a fundamental right under the United States Constitution, this matter will receive rational basis scrutiny.");

It is clear:  federal courts that have examined and analyzed similar vaccine mandates have rejected the same kind of constitutional challenges that are presented here.  It is unlikely that Plaintiffs will succeed on the merits of their claims.  The City's vaccine mandate should survive constitutional scrutiny as being rationally related to legitimate interest – the prevention and mitigation of the

spread, transmission, and deadly consequences of the COVID-19 virus in the City

and County of Honolulu.  This Court should so conclude.

### B.  PLAINTIFFS DO NOT SUFFER IRREPARABLE HARM IN THE ABSENCE OF INJUNCTIVE RELIEF.

A plaintiff seeking preliminary injunctive relief must demonstrate that

irreparable injury is likely in the absence of an injunction.  Winter, 555 U.S. at 22.

A party is not entitled to the extraordinary equitable relief unless it can

demonstrate that it will sustain more than damages of a pecuniary nature.  Regents

of the Univ. of Cal. v. Am. Broad. Co., 747 F.2d 511, 519 (9th Cir. 1984).  Further,

"irreparable injury" is an injury "that is not remote or speculative, but actual and

imminent and for which monetary damages cannot adequately compensate.

Jayaraj v. Scappini, 66 F.3d 36, 39 (2nd Cir. 1995); Carribean Marine Servs. Co. v.

Baldridge, 844 F.2d 668 (9th Cir. 1988).  Moreover, if the harm complained of is

self-inflicted, it does not qualify as irreparable.  11A Charles Alan Wright, Arthur

R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2947 (2nd ed.

1995); Ventura County Christian High Sch. v. City of San Buenaventura, 233 F.

Supp. 2d 1241, 1253 (C.D. Cal. 2002).

There is no irreparable harm or injury in the absence of an injunction.  In

light of the fact that the putative class Plaintiffs who are City employees have been

granted an exemption from the vaccine mandate, they are no longer subject to the

alleged "experimental" vaccine that they are so concerned about.  They fail to satisfy this prong.  The Motion must be rejected.

### C. THE BALANCE OF EQUITIES DECIDEDLY TIP IN FAVOR OF THE CITY, NOT PLAINTIFFS.

"To determine which way the balance of the hardships tips, a court must identify the possible harm caused by the preliminary injunction against the possibility of the harm caused by not issuing it."  Univ. of Haw. Prof'l Assembly v. Cayetano, 183 F.3d 1096, 1108 (9th Cir.1999).

The balance of hardship certainly tips in favor of the City.  The data and science are clear:  unvaccinated persons are 11 times more likely to die from COVID-19.  "Monitoring Incidence of COVID-19 Cases, Hospitalizations, and Deaths, by Vaccination Status — 13 U.S. Jurisdictions, April 4–July 17, 2021," Morbidity and Mortality Weekly Report, Early Release Vol 70 (Sept. 10, 2021), available at https://www.cdc.gov/mmwr/volumes/70/wr/pdfs/mm7037e1-H.pdf.

The City's vaccine mandate is aimed to mitigate serious illness and death due to COVID-19.  It is a measured and medically justified program to mitigate the spread of the virus and to keep the City employees and the City workplace safe. Lee Decl. at ¶ 11.  The balance tips in the City's favor.

D. INJUNCTIVE RELIEF THAT PLAINTIFFS SEEK IS NOT IN THE
   PUBLIC INTEREST.

Plaintiffs bear the burden of showing that the injunction is in the public

interest.  See Winter, 555 U.S. at 20.  The trial court need not consider public

consequences that are "highly speculative."  In other words, the Court should

weigh the public interest in light of the likely consequences of the injunction.  Such

consequences must not be too remote, insubstantial, or speculative and must be

supported by evidence.

If resisting compliance with Directive 2021-7 would inflict harm only on the

putative class members who are City first responders, then perhaps Plaintiffs could

make the case to the Court that the balance of harm and the public interest tips in

their favor.  However, refusing to comply with the Directive has direct negative

and perhaps even deadly consequences not only for Plaintiffs themselves, but also

for their co-workers, other City employees, and members of the public with whom

they interact on a day to day basis.  The data suggests that current vaccines may

not hinder transmission of the COVID-19 virus and variants.  However, the

vaccines do significantly decrease the risk for serious outcomes to both vaccinated

and unvaccinated persons.  See https://www.cdc.gov/coronavirus/2019-ncov/science/science-

briefs/fully-vaccinated-people.html#printhttps://www.cdc.gov/coronavirus/2019-ncov/science/science-

briefs/fully-vaccinated-people.html#print;  https://www.cdc.gov/mmwr/volumes/70/wr/pdfs/mm7034e5-

H.pdf.  Lee Decl. at ¶ 12.  Indeed, the CDC recently issued a study that shows that

unvaccinated persons are 10 times more likely to be hospitalized and 11 times more likely to die from COVID-19.  "Monitoring Incidence of COVID-19 Cases, Hospitalizations, and Deaths, by Vaccination Status — 13 U.S. Jurisdictions, April 4–July 17, 2021," Morbidity and Mortality Weekly Report, Early Release Vol 70 (Sept. 10, 2021), available at https://www.cdc.gov/mmwr/volumes/70/wr/pdfs/mm7037e1-H.pdf.

The public interest does not support enjoining the City whose policymakers and dedicated public employees are trying their best to stop the deadly spread of the COVID-19 virus and the Delta variant.  Plaintiffs do not satisfy this requirement at all.  The Motion, accordingly, should be rejected and denied.

## CONCLUSION

The record before the Court on this Motion does not support granting the extraordinary relief that Plaintiffs seek.  Directive 2021-7 is a rational, reasonable, measured, and legally compliant mitigation effort to ensure that the City workforce continues to work in a safe work environment.  Under the City's vaccine mandate, City residents and visitors to City facilities can continue to have confidence that the public servants who interface with them are fully vaccinated (or have tested negative for the COVID-19 virus) and, therefore, are less likely to spread the virus to them and their families.

Mayor Blangiardi and the City remain committed to all first responders, including the class representatives who are City employees, to get through this pandemic together.  The Mayor's plea to all City employees remains clear:  Get vaccinated.  It's safe; it's free; it saves lives.

The City respectfully requests that the Motion is denied forthwith.

DATED:  Honolulu, Hawaii, September 13, 2021.

<div style="margin-left:40%">

DANA M.O. VIOLA
Corporation Counsel

By:  */s/ Ernest H. Nomura*
       ERNEST H. NOMURA
       KURT Y. NAKAMATSU
       GABRIELE V. PROVENZA

Attorneys for Defendants
CITY AND COUNTY OF HONOLULU
and RICK BLANGIARDI, Mayor

</div>