IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| KAIMI K. PELEKAI, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF HAWAIʻI, *et al.*,<br><br>Defendants. | Case No. 21-cv-00343-DKW-RT<br><br>**ORDER (1) GRANTING DEFENDANTS' MOTIONS TO DISMISS, (2) DENYING AS MOOT PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, AND (3) DISMISSING THE COMPLAINT WITHOUT PREJUDICE** |

When filing this lawsuit on August 13, 2021, three days before the initial effective date of certain State and County-wide policies that were alleged to require the "forcible administration" of a vaccine against COVID-19, Plaintiffs[1] alleged that the policies were pre-empted by federal law. Plaintiffs further alleged that the policies violated their constitutional right to the free exercise of religion by imposing "burdensome and equally-offensive requirements as a condition of employment…."

Roughly two months later, if Plaintiffs' allegations are nothing else, they are outdated. Most important, at least with respect to the 12 Plaintiffs currently before the Court, none has been required or "forced" to take a COVID-19 vaccination. And none will be. Instead, the challenged State policy allows an employee to

---

[1] Plaintiffs are 10 employees of the City and County of Honolulu (Honolulu) and 2 employees of the County of Maui (Maui).

forego vaccination completely and opt to undergo testing instead−an approach Plaintiffs commend. That State policy is likewise the policy of the County of Maui. As for Honolulu, the relevant Plaintiffs also need not be vaccinated, as they have *all* been granted a religious exemption from doing so.

In other words, *none* of the Plaintiffs currently before the Court has been injured by the policies they challenge, at least not based upon the allegations and arguments they have made to-date. Therefore, as more fully set forth below, the Court finds *all* of their claims to be moot, GRANTS the pending motions to dismiss on that basis, and DISMISSES the Complaint WITHOUT PREJUDICE. The Court further DENIES the pending motion for injunctive relief as moot.

## PROCEDURAL BACKGROUND

On August 13, 2021, Plaintiffs, 10 employees of the City and County of Honolulu (Honolulu) and 2 employees of the County of Maui (Maui), filed a Complaint, asserting 14 causes of action challenging (i) an August 5, 2021 Emergency Proclamation Related to the COVID-19 Response by Governor David Ige (the State Vaccine Policy), and (ii) an August 10, 2021 Directive from Mayor Rick Blangiardi (the Honolulu Vaccine Policy, and, collectively, the Vaccine Policies). Compl., Dkt. No. 1. Plaintiffs claimed to have brought this action "on behalf of all other similarly situated persons[,]" specifically, "all current and future first responders on the Islands of Oahu and Maui subjected to the current [Vaccine

Policies]." *Id*. at ¶¶ 28-29.  The Complaint named as defendants the State of Hawaiʻi (State), Governor David Ige (Governor), Honolulu, Honolulu Mayor Rick Blangiardi (Mayor Blangiardi), Maui, Maui Mayor Michael Victorino (Mayor Victorino), and Secretary Xavier Bacerra (Secretary) of the U.S. Department of Health and Human Services (HHS) (collectively, Defendants).

The 14 causes of action in the Complaint are as follows: (1) federal preemption because the Vaccine Policies "require" Plaintiffs to be vaccinated "against their will"; (2) declaratory relief that the Vaccine Policies violate the "laws of nations"; (3) violation of 21 U.S.C. Section 360bbb-3(e)(1)(A)(ii) because COVID-19 vaccines are "investigational" products under Emergency Use Authorization (EUA) and, thus, Plaintiffs must "consent" to their administration; (4) violation of substantive due process because of the "forcible administration" of the COVID-19 vaccines; (5) violation of procedural due process because the COVID-19 vaccines are "experimental"; (6) violation of "international law" because the COVID-19 vaccines are "nonconsensual" and "experimental"; (7) violation of equal protection because vaccinated employees are not subject to testing; (8) violation of the Fifth Amendment right to bodily integrity because "[t]here is reason to believe that some courts would find COVID vaccine mandates inconsistent" with U.S. Supreme Court precedent in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905); (9) violation of substantive due process because Plaintiffs have been deprived of their

right to direct their personal medical care; (10) violation of equal protection because vaccinated and unvaccinated individuals are "arguably indistinguishable"; (11) violation of 21 U.S.C. Section 360bbb-3 (Section 360bbb-3) because polymerase chain reaction (PCR) tests are "investigational" under an EUA and, thus, Plaintiffs must "consent" to their use; (12) violation of Section 360bbb-3 because the Vaccine Policies do not allow Plaintiffs the option to refuse PCR testing; (13) violation of the Fourth Amendment right against unreasonable searches and seizures because the Vaccine Policies are a "mandatory surveillance testing program"; and (14) violation of the First Amendment right to the free exercise of religion because the Vaccine Policies impose "burdensome and equally-offensive requirements as a condition of employment…."  Plaintiffs seek declaratory and injunctive relief with respect to the Vaccine Policies.  Compl. at 59-60.  At the same time, Plaintiffs also filed a motion for temporary restraining order and preliminary injunction (TRO motion). Dkt. No. 2.  Therein, Plaintiffs sought temporary and preliminary injunctive relief prohibiting enforcement of the Vaccine Policies.

The Court set a briefing schedule and hearing date of September 8, 2021 on the TRO motion.  Dkt. No. 7.  One business day before the scheduled filing of Defendants' response to the TRO motion, Plaintiffs filed a "supplemental" brief in support of the TRO motion, along with numerous exhibits and declarations.  Dkt. No. 15.  Therein, Plaintiffs reiterated that the Vaccine Policies violated, and were

preempted by, federal law. Dkt. No. 15-2 at 1-15. Plaintiffs also, for the first time, made arguments and allegations not in the Complaint related to the Vaccine Policies and their impact on Plaintiffs' religious beliefs. *Id*. at 15-20. In light of the timing and unauthorized nature of this "supplemental" filing, the Court, while accepting the same for purposes of a complete record, reset the briefing schedule on the TRO motion and vacated the September 8, 2021 hearing date, noting that the hearing would be re-scheduled upon completion of briefing. Dkt. No. 16.

Thereafter, the Court received oppositions to the TRO motion from the State, Honolulu, and the Secretary, motions to dismiss from the same Defendants, and motions for joinder from Maui and Honolulu. Dkt. Nos. 23, 25-31, 37-38. In summary, the Defendants oppose any injunctive relief and, instead, argue that this case should be dismissed. Among many other arguments in that regard, Honolulu asserts that all 10 of the Plaintiffs employed by it have been granted a religious exemption from the Honolulu Vaccine Policy and, thus, are not required to take a COVID-19 vaccine. Dkt. No. 30-1 at 5. Honolulu argues, therefore, that Plaintiffs' claims are moot.

Plaintiffs then filed three replies in support of the TRO motion, each responding to one of the oppositions filed by Defendants. Dkt. Nos. 39-41. Plaintiffs have also filed three oppositions to the pending motions to dismiss. Dkt. Nos. 44-46. In opposing Honolulu's motion to dismiss, Plaintiffs argue, *inter alia*,

that their case is not moot because they represent a "class" "with hundreds of Plaintiffs", the Honolulu Vaccine Policy is "capable of repetition yet evading review[,]" and the Honolulu Vaccine Policy still contains "offen[sive] language" that this Court can remedy. Dkt. No. 45-1 at 3-4. The Court has also received Defendants' replies in support of each of the motions to dismiss. Dkt. Nos. 54, 58-59.

With briefing complete on the TRO motion, the Court set the same for hearing on October 15, 2021. Dkt. No. 49. The motions to dismiss were also subsequently set for hearing on that date. Dkt. No. 50.

On October 14, 2021, the day before the scheduled hearing, Plaintiffs filed another "supplement" in support of the TRO motion. Dkt. No. 64. Plaintiffs also filed a motion for leave to file a first amended complaint. Dkt. No. 63. Among other things, Plaintiffs assert that they wish to file an amended complaint in order to "add subsequent events[,]" such as the federal government providing full approval and EUA to vaccines manufactured by Pfizer. Dkt. No. 63-2 at 2. Plaintiffs also state that they wish to add "[m]any other" individuals as named plaintiffs in this case−several hundred individuals that Plaintiffs assert have not yet received vaccine exemptions on religious grounds. *Id*. at 2, 4.

On October 15, 2021, a hearing was held on the TRO motion and the motions to dismiss. Dkt. No. 65. At the conclusion of the same, the Court took the pending motions under advisement. This Order now follows.

## STANDARD OF REVIEW

### I. Motions to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move for dismissal due to a lack of subject matter jurisdiction. "[S]tanding and mootness both pertain to a federal court's subject matter jurisdiction under Article III…." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A Rule 12(b)(1) motion can consist of a facial or factual attack on jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." In the latter scenario, a court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Id*.

When a complaint is subject to dismissal, leave to amend should be given when "justice so requires." Fed.R.Civ.P. 15(a)(2). Justice does not require leave to amend when (1) it would prejudice an opposing party, (2) it is sought in bad faith,

(3) it would produce an undue delay in litigation, (4) it would be futile, or (5) there has been repeated failure to cure a deficiency. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

## II. Injunctive Relief

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).[2] When a party "has not shown any chance of success on the merits, no further determination of irreparable harm or balancing of hardships is necessary." *Global Horizons, Inc. v. U.S. Dep't of Labor*, 510 F.3d 1054, 1058 (9th Cir. 2007). Further, a plaintiff must show that "irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008) (emphasis in original); *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011) ("An injunction will not issue if the person or entity seeking injunctive relief shows a mere possibility of some remote future injury or a conjectural or hypothetical injury[.]") (quotations and citations omitted).

---

[2]The standards for a temporary restraining order and a preliminary injunction are substantially the same. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), *overruled on other grounds by Winter*, 555 U.S. at 20.

In addition, before issuing an injunction, a federal court must satisfy itself that subject matter jurisdiction exists. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (explaining that subject matter jurisdiction "involves a court's power to hear a case" and a court has an independent obligation to determine whether such jurisdiction exists) (quotation and citation omitted); *Church of Scientology of Cal. v. United States*, 920 F.2d 1481, 1490-91 (9th Cir. 1990) (affirming a district court's decision to dissolve a temporary restraining order when the court lacked subject matter jurisdiction); *Zepeda v. U.S. Immigration & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1983) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim….").

## **DISCUSSION**

As it must, the Court first addresses whether subject matter jurisdiction exists in this case. Federal courts lack subject matter jurisdiction when, *inter alia*, the case or controversy is moot. *See White*, 227 F.3d at 1242. A case is moot "when interim relief or events have deprived the court of the ability to redress the party's injuries." *Am. Cas. Co. of Reading, Pa. v. Baker*, 22 F.3d 880, 896 (9th Cir. 1994) (quotation omitted).

Here, Defendants argue that Plaintiffs' claims are moot for various reasons. First, Defendants assert that Plaintiffs are not required to receive a COVID-19 vaccine because they have been granted exemptions from doing so. *See, e.g.*, Dkt.

9

No. 30-1 at 5.³  Second, Defendants contend that Plaintiffs need not receive a vaccine subject to an EUA because the U.S. Food and Drug Administration (FDA) has granted full approval to the COVID-19 vaccine from Pfizer-BioNTech (Pfizer Vaccine).  *See, e.g.*, Dkt. No. 23-1 at 17.

As explained more fully below, the Court agrees that *all* of Plaintiffs' claims are moot due to intervening events, the arguments of Plaintiffs in their briefing, and/or the fact that it is now clear that some of the Plaintiffs were never subject to an injury in the first place.

As an initial matter, it is important to understand the numerous claims Plaintiffs bring in the Complaint.  Although 14 in number, those claims *in toto* essentially challenge (1) the alleged "forc[ed]" vaccination of Plaintiffs, (2) the use of vaccines under an EUA, and (3) the use of COVID-19 testing under an EUA.  None of those alleged injuries now exist, to the extent they ever did, or Plaintiffs no longer contend that they are injuries at all.

First, and most importantly, *none* of the Plaintiffs is being forced to receive a COVID-19 vaccine, whether under an EUA or not.  In the case of the two Maui Plaintiffs, they were *never* required to receive a vaccination under the State Vaccine

---

³In its motion to dismiss, Honolulu asserts that its challenge to the Court's subject matter jurisdiction is a facial attack.  Dkt. No. 30-1 at 3.  That is not entirely accurate, however, because the Complaint does not even allege that the Plaintiffs asked for an exemption from the Honolulu Vaccine Policy, let alone received one.  Instead, that information is knowable through evidence submitted outside of the Complaint, *see* Dkt. No. 30-2 at ¶ 2, and thus, Honolulu's argument in this regard is more properly considered a factual attack.  The construction of Honolulu's argument, though, changes nothing to the result herein.

Policy. Rather, that policy, adopted by Maui, allows an individual to opt out of vaccination and elect to be tested for the coronavirus instead. *See* Compl. at ¶ 33. As for the 10 Plaintiffs employed by Honolulu, it is undisputed that *all* of them have received religious exemptions from the Honolulu Vaccine Policy. *See* Dkt. No. 45-1 at 3. In this light, *none* of the Plaintiffs is being forced to receive a COVID-19 vaccination. *See Wade v. Univ. of Conn. Bd. of Trs.*, 2021 WL 3616035, at *7-8 (D. Conn. Aug. 16, 2021) (finding moot the claims of students who had sought and been granted exemptions from a COVID-19 vaccination requirement). This affects Claims One, Two, Three, Four, Five, Six, Seven, Eight, Nine, Ten, and Fourteen.

Second, subsequent to filing the Complaint, Plaintiffs have taken the consistent position that *testing* for the coronavirus is to be applauded. In the Complaint, Plaintiffs alleged that testing violated certain statutory or constitutional rights because testing was experimental and/or impinged on their ability to make personal medical decisions. *See e.g.*, Compl. at ¶¶ 156, 173, 175, 180 From the moment of their responsive briefing, though, Plaintiffs have taken a very different tact. Notably, Plaintiffs now argue that "rapid testing is the best and most effective method to combat outbreaks of COVID-19 because it can detect when someone is infected (*i.e.*, contagious)." Dkt. No. 41 at 12; *see also*, Dkt. No. 45-1 at 16 (arguing that testing is a "[r]easonable alternative[]" to vaccination). Plaintiffs' counsel confirmed this new position at the October 15, 2021 hearing by lauding

11

Maui for having a testing alternative to vaccination. *See* 10/15/21 Hearing Transcript at 19:25-20:8, Dkt. No. 66.[4]  These arguments are incompatible with the allegations in the Complaint, which the Court therefore finds Plaintiffs to have abandoned.  In other words, Plaintiffs no longer assert any claim premised upon or challenging testing. *Cf. Digby Adler Group, LLC v. Mercedes-Benz U.S.A., LLC*, 2015 WL 5138080, at *2 (N.D. Cal. Sep. 1, 2015) (finding the failure to respond to an argument for dismissal of a claim to be an "abandonment" of the claim).  This affects Claims Seven, Nine, Ten, Eleven, Twelve, and Thirteen.

The Court finds none of Plaintiffs' arguments to the contrary on the issue of mootness to be persuasive.  Plaintiffs first argue that their claims are not moot because this is a "class action with hundreds of Plaintiffs…." Dkt. No. 45-1 at 3. This case, however, at least currently, is *neither* a class action *nor* does it involve hundreds of plaintiffs.  Instead, while the Complaint may contain *class allegations*, no certification motion has been filed, and no class has been certified or even evaluated by the Court pursuant to Federal Rule of Civil Procedure 23.  In other words, this argument from Plaintiffs assumes a world that does not currently exist in this case and, thus, does nothing to suggest their claims are not moot.

---

[4]As the Court emphasized at the October 15, 2021 hearing, given Plaintiffs' counsel's approval of Maui's policy, which is, more accurately, the State Vaccine Policy, it would not appear that any claim should be asserted against Maui or the State in this case.  Counsel's assertion that Maui is a *defendant* or necessary party in this case so as to provide a point of comparison with Honolulu and its policy is patently absurd.

12

Next, Plaintiffs argue that the Honolulu Vaccine Policy is "capable of repetition yet evading review." Dkt. No. 45-1 at 3. A policy is "capable of repetition, yet evading review" when "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (quotation omitted). Here, neither condition exists. First, the duration of the Honolulu Vaccine Policy is not too short by any measure, given that, from the document Plaintiffs have provided, there does not appear to be any date for its cessation or expiration. *See* Dkt. No. 15-7. In other words, an individual could challenge the Honolulu Vaccine Policy *at any time*, including if an exemption was revoked.[5] Second, Plaintiffs have provided no expectation that they will be subject to the same action again.[6] Instead, they simply regurgitate, without any explanation, that the Honolulu Vaccine Policy is "capable of repetition yet evading review." *See* Dkt. No. 45-1 at 3. Parroting, however, does not make it so. As

---

[5]Perhaps in recognition that the Honolulu Vaccine Policy could be challenged at any time, Plaintiffs also argue that the policy is "ongoing" and, thus, their claims are not moot. *See* Dkt. No. 45-1 at 4 (citing *City of Houston, Tex. v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1429 (D.C. Cir. 1994)). Plaintiffs, however, provide no explanation for why the cases they cite are applicable here.

[6]In that regard, the Court notes that, in the Complaint, Plaintiffs do not even allege that they had sought an exemption under the Honolulu Vaccine Policy, let alone that their exemptions had been granted. Or that, once granted, the exemptions would be limited or conditioned in some fashion. Or even that, once granted, revocation of the exemption was expected or threatened.

explained above, the Honolulu Vaccine Policy is not *evading* any review, given that it can be challenged at any time.

Next, Plaintiffs argue that the Pfizer Vaccine that has been fully approved by the FDA is not available and, thus, they are still required to use an "experimental" vaccine under an EUA. Dkt. No. 44-2 at 2-4; Dkt. No. 15-2 at 15. As an initial matter, this argument does nothing to dispel the undisputed fact that none of the Plaintiffs is required to receive a vaccine, irrespective of its approval or "experimental" status. Even on its own terms, however, as the Secretary explains, Dkt. No. 23-1 at 17-19, Plaintiffs ignore the same documents they rely upon in making this argument. Notably, in an August 23, 2021 letter to Pfizer, the FDA states that both the vaccine subject to an EUA and the fully approved version are of the "same formulation" and can be used "interchangeably" to provide a vaccination series "without presenting any safety or effectiveness concerns." Dkt. No. 15-12 at 2 & n.8. In other words, according to the FDA, the EUA vaccine is no more "experimental" than its fully approved analogue. In any event, because Plaintiffs are not required to receive a COVID-19 vaccine, the type of vaccine they do not have to receive is of no import.

Finally, Plaintiffs argue that, even if they are exempt from any vaccine requirement under the Honolulu Vaccine Policy, the policy still contains "offen[sive] language" that the Court can order stricken. Dkt. No. 45-1 at 3.

14

Specifically, Plaintiffs appear to challenge the following language in the Honolulu Vaccine Policy: "I understand that a request for a religious exemption based on objections to **specific vaccinations** will not be granted." Dkt. No. 15-7 at 6 (emphasis in original);[7] *see* Dkt. No. 45-1 at 1. Plaintiffs contend that this language is unconstitutional because "[d]isallowing objections to a specific vaccine nullify and neuters [*sic*] Plaintiffs' sincerely held religious beliefs to object to a specific vaccine." Dkt. No. 45-1 at 1. Plaintiffs further assert that their objection to the "specific" vaccines here is that they were all developed using aborted fetal cell lines that run counter to their religious beliefs. *Id*. at 7.

This, however, is an argument searching for a problem.[8] *Nothing* in the Honolulu Vaccine Policy prevents Plaintiffs from objecting to being vaccinated on the ground that they oppose, on religious grounds, vaccines that have been developed using aborted fetal cell lines. This is because that objection is a *general* one: specifically, a general objection to the use of vaccines developed with aborted fetal cell lines. At most, the Honolulu Vaccine Policy may not allow an employee to make the following objection: "I object to the *Pfizer* vaccine on religious grounds because it was developed using aborted fetal cell lines." The policy, however, does *not* prohibit an employee from making the following objection: "I object to *all*

---

[7]In citing Dkt. No. 15-7, the Honolulu Vaccine Policy, the Court cites to the page numbers created by CM/ECF in the top-right corner of each page, *i.e.*, "Page 6 of 6."
[8]It is also a "problem" that was never alleged in the Complaint.

*vaccines* that have been developed using aborted fetal cell lines on religious grounds." The latter is not an objection to a *specific* vaccine, is not prohibited by Honolulu's policy, and is the objection Plaintiffs themselves claim to want to make. In this light, contrary to Plaintiffs' assertions, there is no "offending" language for the Court to strike from the Honolulu Vaccine Policy and, thus, their claims remain moot for the reasons discussed herein.

Accordingly, the Court finds that *all* of the claims raised in the Complaint are moot and DISMISSES them on that basis. Dismissal is without prejudice.[9]

---

[9] Although it is unnecessary to address the many other arguments raised in the motions to dismiss, in order to provide some guidance, the Court makes the following observations. First, on the current record, there appears no basis for *any* claim to be asserted against Maui, Mayor Victorino, or the State, given that the vaccine policies that each has adopted are not being challenged. Second, as for the Honolulu Vaccine Policy, as discussed, the language that Plaintiffs find abhorrent in the exemption-form-guidance documents is not so because Plaintiffs can still object to vaccinations on a general basis in the manner they contemplate. Third, with respect to Plaintiffs' supposed challenge to the issuance of an EUA, it is noticeable in their briefing that Plaintiffs failed to address the arguments from (1) the Secretary that Plaintiffs have failed to exhaust administrative remedies with respect to these claims and the Court does not have jurisdiction under the Administrative Procedures Act to review these claims, *see* Dkt. No. 23-1 at 16-17, and (2) the State that Plaintiffs have no private right of action for their statutory claims, *see* Dkt. No. 26-1 at 21-23. At the very least, Plaintiffs need to contemplate and address these matters should they decide to pursue such claims. Further, Plaintiffs also misconstrue the relevant statutory language. In the Complaint, Plaintiffs allege that, under Section 360bbb-3, they must "consent" to EUA products. Compl. at ¶ 116. That, however, is *not* what the statute provides. Instead, the statute provides that an individual administered an EUA product should be informed "of the option to accept or refuse the administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks." 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III). Here, Defendants have argued, *see, e.g.*, Dkt. No. 23-1 at 25-26, and Plaintiffs have not disputed, that persons receiving an EUA COVID-19 vaccine have been informed of their option to accept or refuse said vaccine. There, thus, does not appear to be anything to these statutory claims. Fourth, it is not clear why the Secretary was named a defendant in this lawsuit. The Complaint seeks to have the Vaccine Policies "stricken…." Compl. at 60. The Secretary, however, did not adopt, and thus has no power to rescind, the Vaccine Policies. Thus, contrary to Plaintiffs' assertion, Dkt. No. 44-2 at 1, 26, the Secretary is not a necessary party here. In addition, contrary to a further assertion from Plaintiffs, *id*. at 3, 28,

## CONCLUSION

To the extent set forth herein, the motions to dismiss, Dkt. Nos. 23, 26, 30, are GRANTED. Dismissal is WITHOUT PREJUDICE. The motions for joinder, Dkt. Nos. 29, 37, 38, are GRANTED. Because all claims have been dismissed, the motion for temporary restraining order and preliminary injunction, Dkt. No. 2, is DENIED AS MOOT.

IT IS SO ORDERED.

Dated: October 22, 2021 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

it is absurd to suggest that the Secretary is liable under 42 U.S.C. Section 1983 because that statute prohibits constitutional deprivations under color of *State* law, something which Plaintiffs have provided no allegation occurred here and which they did not address in their briefing.